## Commonwealth v. Louisville & Nashville Railroad Company.

(Decided April 30, 1912.)

### Appeal from Henderson Circuit Court.

1. Railroads—Owning, Operating and Controlling Bridge—Parallel with Competing Lines—Indictment.—Appellee railroad is charged with the offense of unlawfully owning, possessing and operating a bridge spanning the Ohio River at Henderson, when it at the same time owns and operates another bridge across the Ohio River at Cincinnati. Held, That the Henderson bridge was built under a legislative grant by a Kentucky corporation, and not by a consolidated corporation, and hence does not fall within the provisions of section 849, Kentucky Statutes, when the language thereof is given its fair, reasonable and usual interpretation.

2. Railroads—Owning, Operating and Controlling Bridge—Parallel Lines—Constitutional Provision.—The bridge at Cincinnati runs nearly north and south across the Ohio River while that at Henderson runs almost east and west. These points are separated by land more than two hundred miles, and by water more than three hundred miles. The bridges serve an entirely different population having no community of interest whatever. They are not parallel, and in no sense of the word competing. Section 201 of the Constitution has no application whatever to the question under consideration.

3. Bridge—Building of Before Act.—The Henderson bridge was built many years before the Act of February 15, 1893, intended to regulate consolidated corporations, organized for the purpose of constructing, maintaining and operating bridges, and there is nothing in the act from which it can be fairly inferred that it was the intention of the Legislature to make it applicable to bridges that had been theretofore built.

W. P. McCLAIN, M. M. LOGAN and S. V. DIXON for appellant.

YEAMAN & YEAMAN, BENJAMIN D. WARFIELD and CHAS. H. MOORMAN for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

This is an appeal from a judgment of the Henderson Circuit Court sustaining a demurrer to the following indictment:

"The grand jury of Henderson County, in the name and by the authority of the Commonwealth of Kentucky, accuse the Louisville & Nashville Railroad Company, a corporation, of the offense of unlawfully and wilfully owning, possessing, controlling and operating a bridge spanning the Ohio River at Henderson City, which river forms a northern boundary line to the State of Kentucky, the said corporation at the time owning, possessing, operating and controlling another bridge spanning said river, opposite the city of Cincinnati in the State of Ohio, in this State and Commonwealth; committed in manner and form as follows, to-wit: The said Louisville & Nashville Railroad Company, a corporation, on the first day of September, 1911, and before finding of this indictment in the said county of Henderson did unlawfully and wilfully own, possess, control and operate a bridge spanning the Ohio River at the city of Henderson, Ky., which river forms a northern boundary line to the State of Kentucky, the said corporation at the time did own, possess, control and operate another bridge spanning the said Ohio River opposite the city of Cincinnati, Ohio, both of said bridges spanning the Ohio River from the Kentucky side, the said corporation being incorporated under the laws of the State of Kentucky and owning, controlling and operating a line of railroad, and lines of railroads through and in the State of Kentucky, and especially through and in the State of Kentucky so as to connect its lines of railroad between said bridges across the Ohio River at Cincinnati and Henderson aforenamed, the said bridge at Henderson was purchased by the L. & N. R. R. Co. of the Henderson Bridge & Railroad Company on the 30th day of June, 1906, the said bridge having been constructed by the Henderson Bridge Co. under an act entitled "An Act to Incorporate Henderson Bridge Co.," approved February 9th, 1872, by Legislature of Kentucky, and its charter amended, so as to make its corporate name, Henderson Bridge & Railroad Company, a corporation, grantor of the L. & N. R. R. Co."

It will be observed that the offense charged is that of unlawfully owning, possessing and operating a bridge

spanning the Ohio river at Henderson, which river forms the northern boundary line of the State of Kentucky, when the defendant at the same time owned, controlled and operated another bridge spanning said river opposite the city of Cincinnati in the State of Ohio.

The Commonwealth insists that, under section 849 of the Kentucky Statutes, appellee is expressly prohibited from owning, possessing, leasing, controlling or operating more than one bridge spanning any river forming a boundary line of this Commonwealth, and that, by section 850, the penalty for violating section 849 is fixed at not less than $500 or more than $5,000, and as the indictment shows that the bridge at Henderson is across the Ohio river and the bridge at Cincinnati is across the same river, and that said river forms the boundary line between Kentucky and other States, therefore the defendant company is clearly guilty of a violation of law so long as it owns, controls and operates both the said bridges, and that the court erred in sustaining a demurrer to the indictment. In response to this contention the defendant company says that section 849 has no application whatever to railroad companies, but applies only to that character of corporation described in section 843.

It is next insisted by counsel for the Commonwealth that, even if it is in error as to the foregoing proposition, the indictment is nevertheless good, because in owning and operating these two bridges across the Ohio River the defendant company is violating section 201 of the Constitution, which prohibits carriages from owning, operating or controlling parallel or competing lines. It is urged that, inasmuch as both of these bridges span the Ohio River, although they are not parallel, they are competing.

For reply to this the defendant company says that section 201 of the Constitution has no application whatever to the question at bar. The bridges are not parallel, and were never brought into competition the one with the other. The Henderson Bridge Company was chartered by the Legislature in 1872. Under that act certain persons were empowered to construct and operate a bridge over the Ohio river, at some convenient point within the corporate limits of the city of Henderson on one side, to some convenient point in the State of Indiana opposite the city of Henderson. They are expressly authorized to operate a railway over said bridge

and to place thereon, for the purpose of operating said railway, as many tracks as were desired. Its charter was thereafter amended and its name changed to the Henderson Bridge Railway Co., and in June, 1906, was sold by its owners to the Louisville & Nashville Railroad Co. At that time the Louisville & Nashville Railroad Co. owned and operated a bridge across the Ohio River between Cincinnati and Newport. The bridge at Cincinnati runs nearly north and south across the river; that at Henderson runs almost east and west. These points are separated by land more than two hundred miles and by water more than three hundred miles. The bridges serve an entirely different population having no community of interest whatever. They are not parallel, and in no sense of the word competing. Section 201 of the Constitution has no application whatever to the question under consideration.

If the position of the Commonwealth is maintainable at all it is upon the idea that in the purchase of this bridge the railroad company violated section 849 of the Kentucky Statutes, which is a part of an act of the Legislature passed February 15, 1893, entitled "An Act Relating to Consolidated Corporations Organized Under General Laws for the Purpose of Constructing, Maintaining and Operating Bridges Across Rivers Forming Boundary Lines of This Commonwealth, and Declaring an Emergency." Section 1 of the Act, which is section 843 of the Kentucky Statutes, provides as follows:

"When a corporation heretofore or hereafter organized under general incorporation laws of this Commonwealth for the purposes of constructing, maintaining and operating a bridge across a river forming a boundary line of this Commonwealth has, with the consent of its stockholders, heretofore consolidated, or may hereafter consolidate, with a corporation organized for the same purposes under the laws of any State other than Kentucky, then such consolidated corporation, upon the filing of a verified copy of the agreement of consolidation with the Secretary of State of this Commonwealth, shall have the rights, powers, privileges and immunities of a body politic and corporate under the laws of this State, and shall become and be a corporation resident and citizen of this State, with power to construct, maintain and operate such bridge; and shall be vested with the right of perpetual succession, and with the right and power to condemn land in this Commonwealth necessary

for the construction, maintaining and operating such bridge, its avenues, approaches and necessary appurtenances; said condemnation proceedings to be conducted in the manner prescribed by law for the condemnation of lands for railroad and turnpike purposes. No bridge constructed under this act, nor any main or principal approach thereof, shall cross any railway at grade thereof.''

And so much of section 7 of the act, which is section 849 of the Kentucky Statutes, as is material, provides as follows:

''No corporation such as is described in the title of this act shall ever own, possess, lease, control or operate more than one bridge spanning any river forming a boundary line of this Commonwealth. No bridge constructed by any corporation such as is described in the title of this act shall ever be owned, possessed, leased or controlled by any person or corporation owning, possessing or controlling any other bridge spanning a river forming a boundary line of this Commonwealth, nor by any agent or agents, officer or officers, stockholder or stockholders, of such latter corporation.''

It was under this provision of the statute that the indictment was drawn. It will be observed that, as indicating the character of corporation with which this section of the statute is dealing, reference is made in it to the title of the act, and by referring thereto it is readily seen that the appellee company is not of the class of corporation therein referred to; and for that reason the first paragraph of this section has no application.

But it is insisted that by the second paragraph of this section, when a bridge has been so constructed it may never be sold to any other corporation owning, possessing or controlling another bridge spanning a river forming a boundary line of this Commonwealth, under penalty of law as provided by section 850. This raises the question whether or not the bridge owned by the Henderson Bridge Company was such a bridge as is defined by the act. From the title of the act and section 1 thereof it is apparent that this legislation was passed at the instance of someone interested in a Kentucky corporation which was desiring to co-operate with a foreign corporation for the purpose or erecting a bridge across the Ohio River, for, while no river is named, it is apparent that the act would be applicable only to the Ohio River. The Legislature, recognizing that in enacting

this legislation it was giving to the parties desiring to avail themselves of the benefits thereof important rights, and in order that these rights might not be so exercised as to become oppressive and burdensome to the people, provided in section 7 that no bridge constructed by any corporation such as is described in the title of the act shall ever be owned, possessed or controlled by any person or corporation owning, possessing or controlling any other bridge spanning a river forming a boundary line of this Commonwealth, etc. The Henderson Bridge was built under a legislative grant by a Kentucky corporation, and not by a consolidated corporation such as the act in question contemplates, and hence does not fall within the provisions of section 849, when the language thereof is given its fair, reasonable and usual interpretation.

Again, it was built many years before the enactment of this legislation, and there is nothing in the language of the act from which it could be fairly inferred that it was the intention of the Legislature to make it applicable to bridges that had been theretofore built. There were at the time this legislation was enacted several bridges spanning the Ohio River at Cincinnati, and also at Louisville. The Legislature no doubt recognized that in building additional bridges the citizens of Kentucky living opposite Cincinnati and those living in the city of Louisville would be afforded better facilities for crossing the river at those points, and that by bringing other bridges into competition with those then in existence the people would not only be afforded improved facilities for transportation but, on account of the competition, would be enabled to procure better rates. Hence, there was abundant reason for providing in the act that such a bridge, when so constructed, should never be owned, operated or controlled by any person or corporation engaged in operating a like structure. Clearly, the meaning and intent of this provision of the statute was to prevent the destruction of competition. The Legislature could have had no other possible purpose in view. To give it the construction contended for by the Commonwealth would impose a hardship upon appellee and kindred corporations and at the same time be of no advantage to the Commonwealth or the citizens thereof. It can not be that the Legislature so intended. On the contrary, it is apparent that its purpose was, as stated, to prevent the destruction of competition and, as shown,

there can possibly be no competition between the bridge used by appellee company at Cincinnati and that acquired by it at Henderson.

This is a highly penal statute and should be strictly construed. Its provisions should not be extended so as to make them applicable to any state of facts not falling clearly within its legitimate scope. When so treated, it is apparent that the appellee company does not fall within the class of corporations dealt with in this act; and the Henderson bridge, not being constructed or owned by that class of corporations referred to in the title of the act, appellee company was not prohibited by the terms thereof from purchasing it. This is the interpretation which the lower court placed upon the act and, in our opinion, it is correct.

Judgment affirmed.